Moses Rice, plaintiff in error, *vs.* The State of Georgia, defendant in error.

Where the verdict of the jury is strongly and decidedly against the weight of the evidence, and without sufficient evidence under the law to authorize a conviction for the offense alleged in the indictment, a new trial will be granted.

Criminal law. Simple larceny. Circumstantial evidence. New trial. Before Judge Robinson. Jones Superior Court. October Term, 1871.

The plaintiff in error was indicted for simple larceny. Upon the trial the following evidence was introduced :

### EVIDENCE FOR THE STATE.

William Roberts, sworn : Witness lost a horse, on the night of the 2d of August, 1871, in Jones county, Georgia. Horse was taken out of the lot, the gate of which was at night locked. The lock was found broken in the morning. The horse was a large bay horse, with white hind feet, eight years old, worth $300, belonging to witness. Saw tracks; looked like white man's tracks; did not examine the tracks particularly. The person who got the wrench took it out of the wagon. It is about seventy-five yards from the lot

whence the horse was taken to the wagon shelter. The lot is seventy-five yards from the witness' house. The black-smith's shop is about sixty or seventy-five yards from the house. Do not know that the horse was in the lot that night. It was moonlight, and dry. Heard between daybreak and sunrise that the horse was gone; the crow-bar had been taken from where it was; the track was a fresh one. Witness tracked the horse from the lot to the main road; thence to the fork of the Macon and Clinton road; tracked him in the woods, and into the Clinton road, for some distance. Asked defendant to confess to taking the horse; told him to tell where the horse was; had defendant arrested about two weeks after the horse was taken. Defendant lives about four or five miles from witness. Had ridden the horse that day. The crow-bar had been unsuccessfully used to break the lock. The crow-bar was from one and one-fourth to one and one-half inches square, and four feet long; would weigh about twenty pounds. The catch inside the lock was broken. The crow-bar was flattened at the end, and was about one and three-fourths inches wide. The staples in the gate ran through the posts, and were clinched, so that they could not be drawn.

ISAAC SYKES, sworn: Knows defendant, and the time when Mr. Roberts' horse was taken. Witness saw the horse in the lot that night; the gate was locked after the horse was put in the lot. Heard defendant say, the day before he was arrested, and after the horse was taken, that if Mr. Roberts would give him $200, he (defendant) would get the horse. Witness and defendant went to the blacksmith's shop that morning, and defendant ordered witness to unhook the windows. Witness told him, " Me and Mass Billy had drawn the staples a morning or two before." Defendant told witness, if Roberts would give him $200, he would get the horse, but would not get the man that stole him. Witness asked defendant why he did not get him the first day he hunted for him. Defendant said that was a new thing, but

the horse was no more than twenty-five or thirty-five miles off. The wagoner, Jackson Ford, came after the wagon at twelve o'clock, to have a wrench made. Soon after that, defendant said he be G—d—d, if the crow-bar broke the stable-lock; said that he could go from the shop right through the lot, and get the wrench that broke the lock. Defendant got over the lot fence, and said: "Here is the d—d thing that broke the lock. Witness and Jackson Ford went with the defendant from the shop to the lot. The wagon shelter is in the yard. Saw a track the morning the horse was taken; it was a neat looking track, common heel. Saw it near the gin-house. Defendant picked up the key in the shop. The key was not there the day before. Searched with Mr. Roberts for the key, outside and inside the shop. Have nothing against defendant; never had a misunderstanding with defendant. Defendant reported witness to Mr. Roberts in May or June; liked defendant as well after as before he reported witness. The key was a common padlock key. It had been missing a week or two. Witness said to defendant: "Let us get the crow-bar, and see how a man could break the lock." Witness got the crow-bar, and tried it. Defendant said the crow-bar did not break the lock. Mr. Roberts sent witness and Mr. Simmons to look for the wrench. Nothing was said about the wrench until defendant came there. After Mr. Roberts' wife came there, defendant said: "Here is the d—d thing that broke the lock," and showed how it was done. The key had been missing from time defendant worked at Mr. Roberts'. The track looked like a shoe track to him.

OWEN BOSTICK, sworn: Remembers when Roberts' horse was taken. Went into the lot to look after tracks; went from the little gate, near the gin-house, up to the wagon shelter, followed the tracks back to the horse lot; the tracks indicated shoes with half plates to the heels; saw half plates on defendant's shoes about two weeks after the horse was taken; the tracks seemed to be made by number eight or nine shoes.

Rice *vs.* State of Georgia.

Witness told defendant that Mr. Roberts had offered $200 for his horse; that, as they were working about, they had better look for the horse; defendant seemed willing to go with witness to look for the horse. Heard Mr. Roberts say, in Flanders' store, in Macon, that he would give a reward of $200 for the horse.

AMY SYKES, sworn: Knows defendant and his tracks; went to the wagon shelter the morning after the horse was stolen; saw defendant's tracks; there were plates on the tracks and on defendant's shoes; they were the same identical tracks. Isaac Sykes is witness' son; don't know that Isaac and defendant had a difficulty; Isaac said nothing against defendant. She knew that morning that the tracks were defendant's; did not tell Mr. Roberts, but told Owen and a woman named Anna; the track was a small one, tolerably fine shoe track. The horse's track was very fresh. The moon shone very bright. Thinks the track was made at about ten or eleven o'clock; this is a mere opinion.

The State here closed.

### EVIDENCE FOR THE DEFENDANT.

M. P. WILSON, sworn: Knows defendant. On the night of the 2d of August last, defendant was at the house of witness, two or three miles from Mr. Roberts', at supper time and at eleven o'clock. Sent for defendant after supper, and he did not come; sent for him again, and he came about eleven o'clock; defendant was at witness' house the next morning at day break. Does not remember exactly that it was August 2d, but knows that it was the night the horse was stolen; heard the next morning that the horse had been stolen. Do not know where defendant was between eleven o'clock and day break, or from supper time until eleven o'clock.

MARTHA BLAND, sworn: Lives at Mr. Wilson's. Knows defendant. At "good" after supper time, defendant was at the kitchen window; it was about eight or nine o'clock; he re-

mained there till she went off; she left him in the yard at about ten o'clock. Eat supper about dusk. Defendant was at the window, when Mr. Wilson told witness, about supper time, to tell defendant to go to him; she went back and told Mr. Wilson that defendant had gone off; he had not gone off, but was at the kitchen window; it was not long before she left; had a reason for telling Mr. Wilson that defendant was not there.

JULIA TURNER, sworn: Lives at Mr. Wilson's. Knows defendant. They sent for defendant after supper; when she saw him, she sent him to the house. He stayed in her house that night; he was in her house when she laid down, and once during the night, when she got up, he was there; he was there the next morning, and went out of her house into the yard to go to Macon with Mr. Wilson. Never told Mrs. Wilson's sister that witness believed that defendant stole the horse. Witness' children were sick, and she was up with them; she got up just one time during the night.

JOSEPH WILSON, sworn: Knows defendant. Do not know where he was all night. He was there at supper time and at day break the next morning. Defendant went with witness to Macon that day. It was about dark when witness saw him; heard him talking to witness' father at about 11 o'clock.

Defendant closed.

The jury found the defendant guilty. A motion was made for a new trial upon several grounds, only two of which it is here necessary to mention, to-wit:

1st. Because the jury found contrary to the evidence.

2d. Because the evidence in the case being entirely circumstantial, it was not of such a character as to fasten guilt upon the defendant beyond a reasonable doubt, and that such evidence did not exclude every other reasonable hypothesis, except that of the guilt of the accused.

The Court overruled the motion for a new trial and defendant excepted.

Macon and Augusta Railroad *vs.* Bowen.

SAMUEL D. IRVIN, by brief, for plaintiff in error.

FLEMMING JORDAN, Solicitor General, represented by J. H. BLOUNT, for the State.

WARNER, Chief Justice.

The defendant was indicted in the Court below for the offense of simple larceny, and on the trial, the jury returned a verdict of guilty. A motion was made for a new trial, which was overruled by the Court, and the defendant excepted. In our judgment, the verdict of the jury was strongly and decidedly against the weight of the evidence, and without sufficient evidence, under the law, to authorize a conviction for the offense alleged in the indictment. The circumstantial evidence was not sufficient to establish the hypothesis of the defendant's guilt, as claimed by the State.

Let the judgment of the Court below be reversed.